*In Re*: DELBERT HAMMOND, A NEGLECTED CHILD, DORA MARSHALL BUCHANAN AND INEZ VIRGINIA BUCHANAN

*v.*

DEPARTMENT OF PUBLIC ASSISTANCE OF DODDRIDGE COUNTY, WEST VIRGINIA, AND GERTRUDE SHAW, AS CHILD WELFARE WORKER OF THE DEPARTMENT OF PUBLIC ASSISTANCE OF DODDRIDGE COUNTY, WEST VIRGINIA

(No. 10791)

Submitted October 2, 1956. Decided November 13, 1956.

*John G. Fox,* Attorney General, *Harold A. Bangert, Jr.,* Assistant Attorney General, for appellant.

*J. C. Powell, J. M. Powell,* for appellee.

LOVINS, JUDGE:

The joint petition of Dora Marshall Buchanan and Inez Virginia Buchanan, hereinafter referred to as appellees, was filed in the Circuit Court of Doddridge County, March 4, 1955, seeking a change of custody of Delbert Hammond from the Department of Public Assistance of Doddridge County, West Virginia, to them. The court, sitting as the juvenile court, overruled the demurrer of the Department and upon answers to the petition, heard evidence and on April 7, 1950, awarded custody to appellees without supervision by the Department. Upon petition of the Department of Public Assistance and Gertrude Shaw, a welfare worker, this Court allowed an appeal on December 9, 1955.

In March, 1953, because of the neglect of his parents, Delbert Hammond came into the custody of Mr. and Mrs. Anderson of West Union, West Virginia, where he remained until March 11, 1953, when he was placed by the Department of Public Assistance of Doddridge County in the home of the appellees who reside on their farm

of 106 acres near Twiggs, Pleasants County, which is near the county lines of Tyler and Ritchie Counties.

On April 9, 1953, in a proceeding styled as this one, the Circuit Court of Doddridge County, West Virginia, sitting as a juvenile court, decreed Delbert Hammond to be a neglected child due to the neglect of parental care and awarded his care and custody to the County Department to be received, detained, managed and controlled in the manner as would best conserve his welfare and ordered Lawrence Hammond, his father, to pay to the Department the sum of ten dollars ($10.00) per month for the child's support until "the said child shall reach the age of eighteen (18) or until the further order of this court".

The appellees, in 1946, had signed a foster-parent agreement with the Department of Public Assistance with relation to Kelly and Rex Wright, two children who had been placed in their home for board and care. It was apparently understood that they receive Delbert Hammond upon the same terms and conditions as the Wright brothers had been placed in their home; and on August 7, 1953, the appellees executed a supplemental foster-home agreement with the Department. The child remained in the home of the appellees for a period of fourteen months or until May 10, 1954 when the Department removed the child for the reason that it wanted him in its own county to make a home placement in Doddridge County. The child was placed in the foster home of a Mr. and Mrs. Davis near Salem, West Virginia, where he remained until August 3, 1954, when he was placed in the foster home of Mr. and Mrs. Amos Pigott near Central Station, Doddridge County, where there were five other foster children ranging in age from four to ten years.

The petition of the appellees alleges that there is pending and undetermined in the Circuit Court of Pleasants County a petition of these appellees for permission to adopt this child, and that Lawrence Hammond, the child's father, consented in writing to the adoption of the child by these appellees; that they are ready, willing, able and

anxious to provide a proper and suitable home for the said child, to love and cherish him as their own child, to provide a loving and permanent home, to relieve the state and the public of the expense of his care and to adopt him as their own child; that they are people of good moral character, citizens of the United States, residents of Pleasants County, West Virginia, have no children of their own and believe the best interest and welfare of the child will be promoted if they are permitted to adopt him. The evidence adduced in support of the petition relates to the kind of home the appellees have, their financial status and the care they have heretofore given and are now able to furnish this child; it appearing therefrom that the appellees are capable of giving the child a good home, adequate care and are anxious that they be given this opportunity.

Vivian Jenkins filed a detailed report and her conclusions on the facts in connection with the adoption proceedings in Pleasants County, which by stipulation was made a part of the evidence in this case, and from which report it appears that the Buchanans are sincere in their desire to adopt this child and have persisted in their efforts to have him replaced in their home since his removal nine months previous to filing their petition; that they demonstrate considerable warmth and affection for him and are capable of furnishing a home at least of average comfort and convenience in that community; that their resistive attitude is accounted for in their deep desire to retain this child; that the child is of less than average intelligence; that the Buchanans would probably afford him no more than a high school education; that no persons, other than the Buchanans have offered or shown an interest in maintaining Delbert Hammond at their own expense. A psychological report of Mary M. Goff of Weston State Hospital was received in evidence under a stipulation of counsel, from which it appears that Delbert Hammond, four years old, has the mental age of three years, five months, and indicates that he has a mild functional impairment, that a speech defect may partially

be caused by lack of training and emotional fulfillment; that in an environment where he will receive affection and training, he will be able to make adequate adjustment and development.

It is the position of the appellants, the Department and Gertrude Shaw, a child welfare worker, that the Circuit Court of Doddridge County does not have jurisdiction of the custody of this child; that habeas corpus is a proper proceeding on the law side to recover custody of an infant; and that persons receiving custody of a child under contract with the Department are not eligible for adoption of such child. It is further contended that the determination of this case is governed by, or should be governed by, this Court's decision in the case of *State Department of Public Assistance* v. *Pettrey*, 141 W. Va. 719, 92 S. E. 2d 917.

Counsel for the appellees takes the position that the Circuit Court of Doddridge County, sitting as a juvenile court, having taken jurisdiction of this proceeding and having granted the custody of such child to the Department and retaining jurisdiction, retains jurisdiction of such child until he is twenty-one years of age, Code, 49-5-2, (as amended by Chapter 105, Acts of the Legislature, 1939, Regular Session) ; and that having jurisdiction, such court could at any time, upon petition or even by simple motion after notices, determine such custody as will be conducive to the best interest and welfare of the child.

It is to be noted that this case may be distinguished from the case of *State Department of Public Assistance* v. *Pettrey, supra,* since in the Pettrey case the unwed mother executed to the Department of Public Assistance, very soon after the child's birth, an instrument surrendering her parental rights and giving to such Department the power to consent to his adoption. In the instant case, no such relinquishment or power to consent to adoption has ever been given the Department; the Department gained control of the child in a proceeding in Doddridge

County to declare Delbert Hammond a neglected child. However, the appellees have obtained such relinquishment and consent to adoption from Lawrence Hammond, father of the child.

The Counties of Doddridge, Pleasants and Ritchie constitute the Third Circuit. Chapter 55, Section 1, Acts of the Legislature, 1951. The fact that Doddridge and Pleasants Counties are in the same circuit obviates the principal question decided in *Click* v. *Click,* 98 W. Va. 419, 127 S. E. 194.

On examination of this record we observe that the orders entered by the trial court in this proceeding sometimes refer to the court as a circuit court and sometimes as a juvenile court. We do not think this makes a great deal of difference. Evidently, the Judge of the Circuit Court of Doddridge County and the Judge of the Juvenile Court is the same person.

Is a County Department of Public Assistance an entity which may maintain a suit, action or proceeding? In considering the broad provisions of Code, 49-2-1 to 16, as amended by Chapter 73, Acts of the Legislature, 1941, Regular Session, and especially section 16 of that article, we are inclined to give the statute such application, so as to permit the maintenance of proper proceedings concerning the duties imposed on a County Department of Public Assistance in this state.

In the first question presented here, the County Department of Public Assistance and Esther Shaw contend that the Juvenile Court of Doddridge County has no jurisdiction, and that proceeding in habeas corpus should be utilized. This contention is somewhat inconsistent. The record herein shows that jurisdiction of the Doddridge County Circuit Court was invoked by the Prosecuting Attorney of Doddridge County as a Juvenile Court. Even if there were not concurrent jurisdiction of law and equity in a proceeding to determine the custody of an infant, the principles enunciated by this Court in *Wilson*

v. *Protective Assoc.*, 120 W. Va. 465, 199 S. E. 258, should be applied:

> " Where there is not concurrent jurisdiction of law and equity, and a demurrer to a bill was properly sustained because of adequate remedy at law, but the cause was not transferred by the trial court to the law side for further proceedings under Code, 56-4-11, the appellate court will modify the trial court's decree by providing for the transfer of the cause, and will affirm the decree as thus modified."

But, as is hereinafter shown, in this instance a court of law by habeas corpus proceedings, as well as a court of equity have concurrent jurisdiction.

Section 16, *idem,* as amended, authorizes a court having juvenile jurisdiction to dispose of the custody of neglected children. Or if we treat a juvenile court as a court having equitable jurisdiction, the case of *Stout* v. *Massie,* 140 W. Va. 731, 88 S. E. 2d 51, is authority for the proposition, though not authorized by statute, courts of equity have jurisdiction to determine the custody of an infant. It is also held in *Stout* v. *Massie, supra,* that habeas corpus is a proper remedy to determine the custody of an infant. See *Bell* v. *Eicholtz,* 132 W. Va. 747, 53 S. E. 2d 627; *Lipscomb* v. *Joplin,* 131 W. Va. 302, 47 S. E. 2d 221; *Pukas* v. *Pukas,* 129 W. Va. 765, 42 S. E. 2d 11; *Cunningham* v. *Barnes,* 37 W. Va. 746, 17 S. E. 308; *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212; *Rust* v. *Vanvacter,* 9 W. Va. 600. Though proceedings touching the custody of a neglected child may be instituted, heard and determined in a court of law by proceeding in habeas corpus, the court applies equitable principles to the decision of the questions there presented. *Stout* v. *Massie, supra.*

In determining the custody of a child, this Court has consistently adherred to two major principles. First, that the welfare of the infant whose custody is sought to be determined is of paramount importance. *State ex rel. Palmer* v. *Postlethwaite,* 106 W. Va. 383, 145 S. E. 738;

*State ex rel. Cooke* v. *Williams,* 107 W. Va. 450, 148 S. E. 488; *Reynolds* v. *Reynolds,* 109 W. Va. 513, 155 S. E. 652; *Arnold* v. *Arnold,* 112 W. Va. 481, 164 S. E. 850; *Settle* v. *Settle,* 117 W. Va. 476, 185 S. E. 859; *Finnegan* v. *Finnegan,* 134 W. Va. 94, 104, 58 S. E. 2d 594. Second, that the legal rights of a parent will be respected if the welfare of the infant is not impaired. *Cunningham* v. *Barnes, supra; Pierce* v. *Jeffries,* 103 W. Va. 410, 414, 137 S. E. 651, 51 A. L. R. 1502; *Stout* v. *Massie, supra.*

In this proceeding, we are not greatly concerned with the rights of the parents of Delbert Hammond. His mother deserted him and her whereabouts is unknown. His father is either unable or unwilling to contribute a small sum to his support. Moreover, his father has relinquished his parental rights to the appellees.

We are however vitally concerned with the welfare of this poor little waif. Any person who reads this record cannot help but pity Delbert Hammond who has been moved from place to place with his meager supply of clothing and his pitiful childish toys making up all of his worldly goods. We first find him in the home of Mr. and Mrs. Anderson in Doddridge County. On or about March 11, 1953, he was removed from the foster home near West Union to the home of the Buchanans where he remained until the 10th day of May, 1954. On or about May 10, 1954, he was removed from the Buchanan home to the home of Mr. and Mrs. Davis. His stay in the Davis home became impracticable because of objections made by the father-in-law of Mrs. Davis; and at the request of Mrs. Davis, the Department of Public Assistance removed Delbert Hammond to the home of Mr. and Mrs. Amos Pigott where five other children were staying under the supervision of the Department of Public Assistance of Doddridge County. To say the least, it is difficult to conceive how a child can have a normal, happy childhood with such repeated removals from place to place and associating with strangers, so to speak.

This record, including an investigation made by Mrs.

Vivian Jenkins, shows that the home of the Buchanans is a normal country home. True, they have outside toilet facilities, but they have gas and electric applicances in use in their home. They have a farm of 106 acres with several outbuildings. It may not be the most luxurious home in Pleasants County, but it seems to be a normal farm home and the Buchanans seems to be people who are very much attached to the infant and desire to retain his custody. The removal from the Buchanan home by the Department of Public Assistance was caused by the reluctance of Mrs. Buchanan to submit the infant to a tonsillectomy, and so far as this record shows, the infant has not been subjected to such operation at this time.

We conclude that the welfare of the infant was conserved and protected by the order of the Juvenile Court of Doddridge County, placing the custody of the infant with the appellees. True, the Juvenile Court of Doddridge County offered to grant the right of supervision, but the Department of Public Assistance of Doddridge County declined to accept the offer for the reason that it was outside the limits of that county, which reason seems rather fragile. The Juvenile Court of Doddridge County, having obtained jurisdiction by the first proceeding, Delbert Hammond, as a neglected child, continues under the jurisdiction of that Court until he becomes twenty-one years of age unless discharged by such Court. Code, 49-5-2, as amended by Chapter 105, Acts of the Legislature, 1939, Regular Session. Likewise, the Juvenile Court of Doddridge County may "* * * Commit the child to a suitable person who may be appointed guardian of the person of the child; * * *". Chapter 17, Acts of the Legislature, 1953, Regular Session. By subparagraph of Section 5, *idem*, the Court is authorized to exercise a discretion conducive to the best interest of the child. We are cited to the recent case of *State* v. *Pettrey, supra.* As hereinabove stated, the instant case is to be distinguished from the *Pettrey* case, *supra.*

The Department takes the position that persons receiving custody of a child under contract with the Depart-

ment are not eligible for adoption of such child. We believe this position is inapplicable in the instant case since removal of the child from custody of the Buchanans ended the contractual relation. We consider that the continuing jurisdiction of the Juvenile Court of Doddridge County is in force and effect relative to Delbert Hammond. True, there is a proceeding instituted by the appellees looking to the adoption of Delbert Hammond which has not been determined and may present different questions.

According to the foregoing, we affirm the decree of the Juvenile Court of Doddridge County committing the custody of Delbert Hammond to the appellees.

*Affirmed.*